IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNMY ROSH : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 16-1676 |
| THE GOLD STANDARD CAFÉ AT PENN, INC., : | |
| ET AL. : | |

MEMORANDUM

**SURRICK, J.**                                                                                   **DECEMBER  19  , 2016**

      Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF No. 14.) For the following reasons, the Motion will be granted in part and denied in part.

**I.   BACKGROUND**

      Plaintiff's First Amended Complaint alleges that on July 19, 2011, Plaintiff was hired to work as a prep cook at Defendant Gold Standard Café at Penn, Inc. ("Gold Standard Café"). (Am. Compl. ¶ 17, ECF No. 13.) Defendants Vincent Whittacre, Roger Harman, and Jose Brion were co-owners of Defendant Gold Standard Café during the time that Plaintiff was employed there. (*Id*. ¶ 9.) Plaintiff alleges that she was sexually assaulted on multiple occasions while she was working for Defendants. In September 2011, one of her co-workers, Gerardo Solobino ("Solobino"), grabbed her in the crotch area while she was at work. (*Id*. ¶ 19.) Solobino also made attempts to touch Plaintiff's breasts, and consistently stared at her breasts while at work. (*Id*. ¶ 20.) On May 28, 2012, while Plaintiff was wearing shorts, Solobino pretended to pick up an item from the floor and intentionally touched Plaintiff's legs. (*Id*. ¶ 25.) Beginning in January 2012, another one of Plaintiff's co-workers, Josue Leon Velazquez ("Velazquez"), attempted to touch Plaintiff and made multiple sexually inappropriate comments towards

Plaintiff while at work.  (*Id.* ¶ 21.)  Plaintiff alleges that these actions were "offensive, unwelcome and sexually harassing in nature."  (*Id.* ¶ 22.)  Plaintiff told Solobino and Velazquez to stop sexually harassing her; however, both of her co-workers continued with their inappropriate behavior.  (*Id.* ¶¶ 23, 24.)

On May 30, 2012, Plaintiff reported the sexual harassment to Defendant Whittacre.  (*Id.* ¶ 26.)  Plaintiff then reported the harassment to Defendant Brion.  (*Id.* ¶ 28.)  Defendants Whittacre and Brion told Plaintiff that they would speak to Solobino and Velazquez about the matter.  (*Id.* ¶ 29.)  Nevertheless, Solobino and Velazquez continued to sexually harass Plaintiff.  (*Id.* ¶ 30.)  Plaintiff subsequently sent an email to Defendants on August 13, 2012, complaining that the sexual harassment had continued.  (*Id.* ¶ 31.)  Defendant Harman responded, stating that Defendants would stop the harassment.  (*Id.* ¶ 32.)  Defendants Brion and Harman subsequently met with Plaintiff regarding the sexual harassment, and Plaintiff told them that Solobino had grabbed her in the crotch area and that she was afraid of Solobino.  (*Id.* ¶ 34.)  Defendant Harman told Plaintiff that he would speak to Solobino and Velazquez.  (*Id.* ¶ 35.)

Plaintiff alleges that the sexual harassment continued.  (*Id.* ¶ 36.)  On September 21, 2012, Plaintiff sent a letter to Defendants reporting that Solobino and Velazquez were continuing to sexually harass her and asking Defendants to take action.  (*Id.*)  In the letter, Plaintiff wrote that she would report Defendants to the Pennsylvania Human Relations Commission ("PHRC") if they did not take appropriate remedial action.  (*Id.* ¶ 37.)  Following the September 21 letter, Solobino and Velaquez continued to sexually harass Plaintiff.  (*Id.* ¶ 38.)  On October 11, 2012, Plaintiff again reported the ongoing harassment to Defendants.  (*Id.* ¶ 39.)  Plaintiff informed Defendants that their previous attempts to stop the harassment were "inappropriate."  (*Id.*)  Plaintiff alleges that after reporting to Defendants on October 11, Defendant Brion stopped

speaking to her and reduced her work hours.  (*Id*. ¶ 40.)  On October 15, 2012, Defendant Harman told Plaintiff to try to stop the harassment on her own.  (*Id*. ¶ 41.)  On October 29, 2012, Plaintiff resigned.  (*Id*. ¶ 42.)  Plaintiff alleges that she had no choice but to resign because Defendants refused to address her reports of sexual harassment, because she was being discriminated against, and because Defendants retaliated against her.  (*Id*.)

On April 8, 2016, Plaintiff filed her Complaint.  (Compl., ECF No. 1.)  On October 11, 2016, Plaintiff filed a First Amended Complaint adding Defendant Gold Standard Café at Penn, Inc. as a party.  The First Amended Complaint alleges that Defendants discriminated against her by subjecting her to a hostile work environment, constructively discharging her, and retaliating against her for reporting the harassment.  (Am. Compl. ¶¶ 52, 54, 58, 59.)  Plaintiff seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) ("Title VII") (Counts I and II), and under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 ("PHRA") (Counts III and IV).  On October 31, 2016, Defendants filed the instant Motion to Dismiss and Memorandum.  (Defs.' Mot., ECF No. 14.)  On November 8, 2016, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss.  (Pl.'s Resp., ECF No. 15.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  When deciding a motion to dismiss, a district court must accept all well-pleaded facts, disregarding any legal conclusions alleged in the complaint.  *Fowler*, 578 F.3d at 210-11.

## III.  DISCUSSION

Plaintiff brings Title VII and PHRA claims against Defendant Gold Standard Café and against the individual co-owners, Defendants Whittacre, Harman, and Brion.  We will address Plaintiff's claims against Defendant Gold Standard Café and the individual co-owner Defendants separately.

### A.  Defendant Gold Standard Café

Plaintiff alleges that Defendants' actions violated both Title VII and the PHRA.  For our purposes, "[t]he proper analysis under Title VII and the [PHRA] is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably."  *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001), overruled in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996) ("Generally, the PHRA is applied in accordance with Title VII."); *Davis v. Sheraton Soc'y Hill Hotel*, 907 F. Supp. 896, 899 n.1 (E.D. Pa. 1995) ("The PHRA is applied to accord with Title VII.  For this reason, our discussion under Title VII applies equally to the PHRA claim."); *Driscoll v. Lincoln Tech. Inst.*, 702 F. Supp. 2d 542, 545-46 (E.D. Pa. 2010)

(analyzing Title VII and the PHRA under the same standard and noting that the "PHRA uses nearly identical language" to Title VII). Therefore, we will analyze Plaintiff's PHRA claim under the Title VII standard.

Under Title VII, an employer may not "discharge . . . or . . . discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff's First Amended Complaint alleges the following: Defendant created a hostile work environment; Plaintiff was constructively discharged because of the work environment; and Defendant retaliated against her because she reported incidents of sexual harassment. We will address each in turn.

### 1. Hostile Work Environment

A plaintiff states a claim under Title VII if she alleges that she experienced sexual harassment in the workplace, which in turn created a hostile work environment. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). In order for Plaintiff to establish a hostile work environment claim against Defendant Gold Standard Café, she must prove that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) Defendant Gold Standard Café is subject to liability under the theory of *respondeat superior*. *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990).

When determining whether the work environment was hostile, we must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

With regard to the first factor, the Third Circuit has noted that "when the harasser and victim are of the opposite sex, there is a reasonable inference that the harasser is acting because of the victim's sex." *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257, 262 (3d Cir. 2001) (citing *Oncale v. Sundowner Offshore Sevs., Inc.*, 523 U.S. 75, 80 (1998)). Here, Plaintiff alleged that Solobino grabbed her crotch area and that Solobino and Velazquez both made sexually inappropriate comments towards her and attempted to touch Plaintiff's breasts and body on multiple occasions. (*Id.* ¶¶ 19-21). Solobino and Velazquez are both men. Plaintiff has alleged facts sufficient to claim that she suffered from the harassment because she was female.

With regard to the second factor, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal citation and quotation marks omitted). "[S]imple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted); *see also Anderson v. Deluxe Homes of PA, Inc.*, 131 F. Supp. 2d 637, 645 n.3 (M.D. Pa. 2001) ("Title VII does not prohibit genuine but innocuous differences in the ways men and women routinely interact with members of their own or the opposite sex."). Here, Plaintiff alleges a number of instances where her co-workers grabbed at her inappropriately, made sexually inappropriate comments towards her, and attempted to make physical advances towards her. Further, Plaintiff alleges that Solobino actually grabbed Plaintiff in the crotch area while she was working. (Am. Compl. ¶ 19.) Clearly this behavior is not innocuous, and does not constitute

simple teasing.  This conduct is severe.  In addition, Plaintiff's allegations do not simply state offhand or isolated incidents.  Plaintiff alleges that the incidents of sexual harassment occurred continuously over the course of twelve months, beginning in September 2011 and lasting until she resigned in October 2012.  (*Id*. ¶¶ 19, 42.)  We are satisfied that Plaintiff has sufficiently alleged that she was subjected to severe and pervasive sexual discrimination.

With regard to the third factor, Plaintiff must allege that Solobino and Velazquez's actions and comments were unwelcome and that she found her work environment abusive.  *Meritor*, 477 U.S. at 68 ("The correct inquiry is whether [the plaintiff] by her conduct indicated that the alleged sexual advances were unwelcome . . . ."); *see also Harris*, 510 U.S. at 21-22 ("[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.").  Plaintiff has alleged sufficient facts to prove that her co-workers' actions were unwelcome and abusive.  Plaintiff stated that she found her co-workers' actions "offensive, unwelcome and sexually harassing in nature," and that she asked them to stop harassing her.  (Am. Compl. ¶ 22, 23.)  In fact, Plaintiff asked Defendants to stop the harassing behavior on multiple occasions.  Plaintiff also stated that she was afraid of Solobino.  (*Id*. ¶ 34.)  We are satisfied that Solobino and Velazquez's actions were unwelcome, abusive, and detrimentally affected Plaintiff.

With regard to the fourth factor, Plaintiff must plead sufficient facts to demonstrate that a reasonable person would be detrimentally affected by the harassment.  *Anderson*, 131 F. Supp. 2d at 647; *see also Harris*, 510 U.S. at 21 (finding that the court must consider whether the alleged harassment would create "an environment that a reasonable person would find hostile or abusive").  Plaintiff's co-workers grabbed her crotch area, made sexually inappropriate

7

comments towards her, and attempted to touch Plaintiff's breasts and body on multiple occasions. Any reasonable person would find these actions both hostile and abusive.

With regard to the fifth factor, Defendant Gold Standard Café will be found liable under the theory of *respondeat superior* if "management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action . . . ." *Andrews*, 895 F.2d at 1486 (citation and quotation marks omitted); *see also Huston*, 568 F.3d at 105 (holding that an employer will be held directly liable for an employee's sexual harassment "only if the employer was negligent . . . in responding to a report of such harassment."); *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999) (noting that an employer will not automatically be found liable for a hostile work environment). Defendants argue that Plaintiff's Complaint has not alleged sufficient facts that would lead to liability for Defendant Gold Standard Café. (Defs.' Mot. 6.) We disagree.

Defendants Whittacre, Harman, and Brion were co-owners of Defendant Gold Standard Café during the relevant period, and thus qualify as management-level employees. *Huston*, 568 F.3d at 107 (concluding that an employer qualifies as a management-level employee if the employee is "sufficiently senior in the employer's governing hierarchy, or otherwise in a position of administrative responsibility over employees under him . . . so that such knowledge is important to the employee's general managerial duties."). Plaintiff informed Defendant co-owners of the ongoing sexual harassment on at least four separate occasions. (Am. Compl. ¶¶ 26, 31, 36, 39.) Once an employer has knowledge of the sexual harassment, it must take prompt and adequate actions reasonably calculated to prevent further harassment. *Knabe v. Boury Corp.*, 114 F.3d 407, 411 n.8 (3d Cir. 1997). Plaintiff first reported instances of sexual harassment to Defendants on May 30, 2012. (Am. Compl. ¶ 26.) Defendants assured Plaintiff

that they would speak to Solobino and Velazquez.  (*Id*. ¶ 29.)  When the harassment did not stop, Plaintiff continued to report the harassment via email, letter, and in-person.  (*Id*. ¶ ¶ 31, 36, 39.)  On October 11, 2012, Defendant Brion stopped speaking to Plaintiff.  (*Id*. ¶ 40.)  On October 15, 2012, Defendant Harman told Plaintiff that she should stop the harassment on her own.  (*Id*. ¶ 41.)  Solobino and Velazquez continued to harass Plaintiff until she resigned on October 29, 2012.  (*Id*. ¶ 42.)  Other than speaking with Solobino and Velazquez, Defendants did not take any additional steps to remedy the situation.  (*Id*. ¶¶ 29, 35.)  Even after Plaintiff indicated that Defendants' conversation with Solobino and Velazquez were ineffective, Defendants did not take any further steps to attempt to stop the harassment.  To the contrary, Defendants stopped speaking to Plaintiff and told her to fix the situation on her own.  Plaintiff has pled facts sufficient to demonstrate that Defendants' actions were not reasonably calculated to prevent further harassment.

Accordingly, Plaintiff has sufficiently stated a Title VII discrimination claim against Defendant Gold Standard Café for a hostile work environment.

        2.        *Constructive Discharge*

Plaintiff argues that she was constructively discharged because of the hostile work environment and because she reported incidents of sexual harassment to Defendants to no avail.  (Am. Compl. ¶ 59.)  "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge . . . ."  *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004).  "The resignation is treated as if it were an outright dismissal by the employer, which can serve as the basis for a discrimination claim."  *Hibbard v. Penn-Trafford Sch. Dist.*, No. 13-622, 2014 WL 640253, at *7 (W.D. Pa. Feb. 19, 2014) (citing *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167-68 (3d Cir.

2001)).  The employer's actions must be serious enough that it changes the employee's "compensation, terms, conditions or privileges of employment" and that makes continuing employment with the employer "so unpleasant or intolerable that a reasonable person in the employee's shoes would resign."  *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992) (citation omitted).  A plaintiff need not demonstrate that the employer specifically intended to force the employee to quit, only that the employer knowingly permitted the unpleasant or intolerable discrimination.  *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984).

Here, Plaintiff has demonstrated that her work environment was sufficiently unpleasant and intolerable that a reasonable person would resign.  Plaintiff has alleged that she was repeatedly harassed, that she was grabbed, and that she was afraid while at work.  Defendants did nothing to solve the problem.  Plaintiff's allegations do not "merely detail a series of workplace slights and petty grievances," but rather demonstrate a workplace environment that would cause a reasonable person to resign.  We are satisfied that Plaintiff has sufficiently pled facts to support a constructive discharge claim.

        *3.     Retaliation*

Title VII also prevents employers from retaliating against employees for reporting instances of sexual harassment in the workplace.  *Petril v. Cheyney Univ. of Pennsylvania*, 789 F. Supp. 2d 574, 579 (E.D. Pa. 2011).  Title VII states that an employer cannot "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  In order to state a retaliation claim under Title VII, a plaintiff must

establish that: "'(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). When analyzing a motion to dismiss, a court need only determine "whether [the] plaintiff has plead 'enough facts to raise a reasonable expectation that discovery will reveal evidence' of [a] plaintiff's retaliation claim." *Standen v. Gertrude Hawk Chocolates, Inc.*, No. 11-1988, 2012 WL 3288916, at *8 (M.D. Pa. Aug. 10, 2012) (quoting *Phillips*, 515 F.3d at 234).

With regard to the first element, a plaintiff is considered to have engaged in protected activity if the employee "opposes, or participates in a proceeding against, the employer's activity." *Moore*, 461 F.3d at 341. A plaintiff will be considered to have engaged in protected activity if she complains to management about discriminatory treatment. *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). Further, the plaintiff must reasonably believe that the employer's activity is in violation of Title VII. *Moore*, 461 at 341; *see also Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (noting that a plaintiff "need not prove the merits of the underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed." (internal citation and quotation marks omitted)).

Here, Plaintiff reasonably believed that Defendants were required to take steps to prevent the sexual harassment and the hostile work environment that she was exposed to as an employee. Plaintiff demanded that Defendants take action to address the sexual harassment, and stated that she would report the harassment to the PHRC if the harassment did not stop. (Am. Compl. ¶¶ 36, 37.) Given the ongoing sexual harassment alleged in the Complaint, we are satisfied that

Plaintiff had a reasonable basis to believe that Defendants were violating their duties under Title VII.  Plaintiff was engaged in protected activity.

With regard to the second element, in order to allege that the retaliatory action was materially adverse, the action must "dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington*, 548 U.S. at 57.  Here, Plaintiff alleges that after reporting the ongoing sexual harassment to Defendants on October 11, 2012, Defendant Brion stopped speaking to Plaintiff and reduced Plaintiff's scheduled work hours.  (Am. Compl. ¶ 40.)  These actions would dissuade any reasonable worker from reporting a charge of sexual harassment.  Defendant Brion had managerial authority over Plaintiff, and it is to Plaintiff's detriment if one of the co-owners stops talking to her.  More consequential, however, is that Defendant Brion reduced her scheduled work hours.  This would certainly dissuade a reasonable person from reporting harassment in the future.

With regard to the third factor, a plaintiff must prove causation either through "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  The Third Circuit has held that temporal proximity exists if a plaintiff alleges a retaliatory action that occurred "[s]everal months after [the plaintiff's] last protected activity."  *Petril*, 789 F. Supp. 2d at 581 (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997)).  Here, Plaintiff alleges that on September 21, 2012, Plaintiff wrote a letter to Defendants stating that if they did not take action in response to the sexual harassment, she would report them to the PHRC.  (Am. Compl. ¶ 37.)  On October 11, 2012, Plaintiff complained again to Defendants about the ongoing sexual harassment.  (*Id*. ¶ 39.)  Plaintiff alleges that following her October 11 complaints

Defendant Brion stopped talking to her and reduced her work hours. (*Id.* ¶ 40.) Plaintiff did not specify the exact date when Brion took these actions, however we know that it must have been before Plaintiff resigned on October 29. (*Id.* ¶ 42.) These events unfolded within a matter of five weeks. Clearly, there is temporal proximity between Plaintiff's protected activity and Defendants' actions.

Plaintiff has pled facts sufficient to state a claim under Title VII for discrimination, constructive discharge, and retaliation.[1]

### B.     Defendant Co-Owners Whittacre, Harman, and Brion

Plaintiff alleges in her Complaint that the individual defendants violated Title VII and the PHRA. As noted above, Title VII and the PHRA can be analyzed under the same standard. However, Title VII does not apply to individual defendants. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996) (holding that "individual employees cannot be held liable under Title VII"); *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 462 (E.D. Pa. 2013) (holding that individuals are not liable under Title VII "even if the individuals in question own the defendant corporation"). Defendants argue that the individual Defendants cannot be held liable under Title VII. (Defs.' Mot. 4.) Plaintiff agrees. (Pl.'s Resp. 3.) Accordingly, we will dismiss Plaintiff's Title VII claims against the individual Defendants.

Unlike Title VII, the PHRA provides for individual liability. The PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . ." 43 Pa. Stat. Ann. § 955(e). Courts have held that only supervisory employees can be held individually liable under the PHRA. *See Destefano v. Henry Mitchell*, No. 99-5501,

---

[1] Since the PHRA is applied in accordance with Title VII, we find that Plaintiff has also stated a claim under the PHRA.

2000 WL 433993, at *2 (E.D. Pa. Apr. 13, 2000) ("Courts have distinguished between nonsupervisory and supervisory employees and imposed liability only on the latter, on the theory that supervisory employees can share the discriminatory intent and purpose of the employer." (citing *Dici*, 91 F.3d at 553)).

"[A]n individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory . . . for his failure to take action to prevent further discrimination by an employee under supervision." *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998); *see also Dici*, 91 F.3d at 553 (noting that a supervisory employee will be found to have aided and abetted the discriminatory practice if he/she "knew or should have known that the [p]laintiff was being subjected to harassment" but "repeatedly refused to take action to end the harassment directed at [the plaintiff]" (citation and quotation marks omitted)); *Carlton v. City of Philadelphia*, No. 03-1620, 2004 WL 633279, at *8 (E.D. Pa. Mar. 30, 2004) (holding that the plaintiff's complaint alleged that the employees aided and abetted the discrimination because the plaintiff complained about the harassment multiple times and was subjected to unfair retaliation).

As noted above, Defendants were co-owners of Gold Standard Café and thus qualify as supervisory employees. Defendants concede that the PHRA provides for individual liability against individuals. However, they argue that Plaintiff's complaint does not allege that Defendants aided or abetted the discrimination. (Defs.' Mot. 5.) Plaintiff argues that she has pled facts sufficient to show that Defendants aided and abetted the discrimination because Defendants refused to take remedial action in response to Plaintiff's reports of discrimination. (Pl's. Resp. 9.) We agree. Plaintiff alleges that she reported multiple instances where Solobino and Velazquez sexually harassed her. While Defendants told Plaintiff that they would speak

with Solobino and Velazquez, when Plaintiff told Defendants that the harassment was continuing, Defendants did not take any steps in to remedy the situation. To the contrary, Plaintiff alleges that Defendants stopped speaking to her and told her to fix the situation on her own. (Am. Compl. ¶¶ 40, 41.) Accordingly, we find that the individual Defendants refused to take appropriate actions to end the harassment. Plaintiff has sufficiently stated a claim for individual liability under the PHRA.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**